301 So.2d 797 (1974)
Vito DAVANZO, Appellant,
v.
MIAMI NATIONAL BANK, Appellee.
No. 73-1352.
District Court of Appeal of Florida, Third District.
October 1, 1974.
Rehearing Denied November 5, 1974.
Louis Vernell, Miami, for appellant.
Frates, Floyd, Pearson, Stewart, Proenza & Richman, Miami, for appellee.
*798 Before BARKDULL, C.J., and HENDRY and HAVERFIELD, JJ.
PER CURIAM.
Plaintiff-appellant seeks review of an adverse final judgment entered in favor of the defendant-appellee on its counterclaim and against the plaintiff on his complaint.
Prior to 1969, Leisure Industries, Inc., f/k/a Fibra Boats, Inc., a fiberglass boat manufacturing business, had borrowed from the defendant-appellee, Miami National Bank, $75,000 and $120,000 and pledged as security therefor all of its assets and its outstanding stock. In addition, by August 1969 the company was insolvent and had accumulated over $58,000 in overdrafts in its two checking accounts in defendant bank. Further, Leisure Industries had been placed into involuntary bankruptcy. At about this time plaintiff-appellant, Vito Davanzo met one Harry Siegel who discussed with plaintiff the possibility of salvaging Leisure. Siegel who already had an interest in the company convinced Davanzo, an experienced businessman, that there was the possibility of a good deal if they bought Leisure Industries, Inc. which was in poor financial condition. Subsequently, Siegel and appellant went to the defendant bank and discussed the purchase of the defendant bank's equity interest in Leisure Industries and to obtain working capital for the operation thereof. On October 1, 1969 plaintiff and Siegel, accompanied by Siegel's attorney, conferred with the president of the defendant bank and plaintiff was allowed to borrow $280,000 which represented Miami National Bank's entire interest as a creditor of Leisure Industries, Inc. plus a loan of operating capital. Plaintiff-appellant thereupon executed a 90 day promissory note in the sum of $280,000 bearing interest at 1/2% above the prime rate at maturity (8%) and pledged as security therefor 8,500 shares of Thomas & Betts common stock. On the same day, plaintiff and Siegel also borrowed an additional $58,897.11, representing Leisure's overdraft indebtedness to the defendant bank, and signed a promissory note in that amount secured by the 8,500 shares of Thomas & Betts common stock. As consideration therefor, defendant Miami National Bank agreed to forbear the collection of the overdraft indebtedness for a reasonable time in order to improve plaintiff Davanzo's position as a secured creditor in the pending bankruptcy proceedings and in accordance therewith, defendant charged no interest on this note until October 29, 1970. Davanzo deposited the $280,000 in his personal checking account in defendant bank and then with a portion of these funds purchased from the defendant bank the notes executed by Leisure Industries, Inc. to the bank and the security and pledge agreements. The outcome of all of the above transactions was that plaintiff assumed the Miami National Bank's position as the secured mortgagor of Leisure, gained control and possession of all Leisure assets and stock, and extricated Leisure from its debts. By mid-November, more money was needed to keep Leisure going and on November 12, 1969 plaintiff-appellant borrowed $45,000 and signed a 90 day note in that amount and pledged as security an additional 2,500 shares of Thomas & Betts common stock. Davanzo deposited the $45,000 in his personal account and, as required by the defendant bank, from these proceeds repaid a $25,000 note of the F.M. Corporation, a subsidiary of Leisure organized for the sole purpose of financing engines to put into boats manufactured by Leisure. In December 1969, plaintiff borrowed $10,000 from the defendant bank, executed a 90 day $10,000 note and deposited the funds in his personal account. In January 1970, Davanzo and Siegel appeared at the bank but were unsuccessful in their attempt to borrow money for inventory financing. By August 1970, plaintiff brought a foreclosure suit against Leisure Industries, obtained a judgment of foreclosure, and bid on the Leisure assets for $25,000. Plaintiff never made payments on any of the notes and in October 1970 filed the instant *799 complaint wherein he sought to rescind the notes on the grounds of fraud and usury and to enjoin the sale of his collateral stock. In response thereto, defendant bank answered and counterclaimed to recover upon each of the four notes. The cause proceeded to a non-jury trial at the conclusion of which the trial judge entered final judgment for defendant bank on its counterclaim and against the plaintiff on his complaint. The trial court found that plaintiff had failed to prove a usurious interest charge and that the usury laws are inapplicable to this purchase and sale transaction and further, that plaintiff owed the defendant a total of $518,440.85 on the four notes, including principal and interest. Thereafter, the court entered an order taxing costs and attorneys' fees against the plaintiff and denied plaintiff's motions for new trial and mitigation and clarification of court order. Plaintiff now appeals the adverse judgment and post-trial orders.
We first turned our attention to plaintiff's contention that the trial court erred in not rescinding the notes executed by plaintiff or awarding plaintiff damages where plaintiff was induced through fraud and misrepresentations by the defendant bank as to the worth of Leisure Industries, Inc. to purchase the bank's security interest in Leisure's assets.
It is well settled that a person to whom false representations have been made is not entitled to relief because of them if he might have ascertained readily the truth by ordinary care and attention and his failure to do so was the result of his own negligence. Where the means of knowledge are at hand and are equally available to both parties and the subject matter is equally open to their inspection, if one of them does not avail himself of those means and opportunity, he will not be heard to say that he was deceived by the other's misrepresentations. Scocozzo v. General Development Corporation, Fla.App. 1966, 191 So.2d 572.
Turning to the case sub judice, it affirmatively appears from the record that the plaintiff knew of the poor financial condition of Leisure Industries, Inc. and further, on several occasions had the opportunity to examine the books and records of Leisure and inspect the business premises but failed to do so. Thus, we agree with the finding of the trial judge that the plaintiff-appellant failed to prove that the defendant bank or its agents by the use of fraud, misrepresentations or material misstatements caused him to borrow money from the Miami National Bank in order to acquire the defendant's interest in Leisure Industries, Inc.
Appellant secondly argues as error the trial court's determination that the loans made to plaintiff on March 1, 1969 and November 12, 1969 were not usurious.
First, we take notice of the fact that the subject notes on their face are for legal rate of interest only and, therefore, appellant had the burden of proving that there was some corrupt device to cover usury and that it was in the full contemplation of the parties. 33 Fla.Jur. Usury § 15 (1960).
With respect to the transactions of October 1, 1969, plaintiff signed a note in the amount of $280,000 and actually received that sum in cash from the defendant bank. In addition, plaintiff and one Harry Siegel signed and executed a promissory note in the amount of $58,897.11, which figure represented Leisure's existing checking account overdraft indebtedness to defendant Miami National Bank. The purpose in executing this note was to substitute plaintiff's indebtedness for that of Leisure Industries, Inc. f/k/a Fibra Boats, Inc., and to acquire the common stock of Leisure (1,100,000 shares) previously pledged and assigned to the defendant bank as security for the debts past and future of Leisure Industries, Inc.
Further, as consideration for this $58,897.11 note, defendant bank agreed to *800 forbear the collection of the overdraft indebtedness for a reasonable time in order to improve plaintiff's position as a secured creditor in bankruptcy. Almost a year later on October 29, 1970 the defendant then disbursed the proceeds of this note to credit the indebtedness of Leisure and began charging interest thereon.
With a portion of the funds received from the $280,000 loan, plaintiff paid off and was assigned by the defendant the two existing secured notes of Leisure Industries, Inc. Thereupon, plaintiff-appellant received the foregoing:
(1) Note of Leisure Industries of March 13, 1969 in the face amount of $120,000, reduced by Leisure to $50,000 plus interest.
(2) Renewed note of Fibra Boats, Inc., dated March 13, 1969, in the face amount of $75,000 unreduced and due in full plus interest.
(3) Stock powers, 1,100,000 shares of common stock of Leisure Industries, and the pledge agreements.
(4) UCC-1 forms on both Leisure Industries, Inc. and Fibra Boats, Inc., together with their respective security agreements.
(5) Assignments of all of the foregoing to the plaintiff by the defendant bank.
Plaintiff Davanzo thereby substituted himself in place of the defendant Miami National Bank as creditor of Leisure Industries, Inc. and failed to prove that the defendant bank by some corrupt device or scheme attempted to charge a usurious rate of interest.
With respect to the note of November 12, 1969, we find plaintiff received $45,000 which was the face amount of the note. As agreed, from part of the proceeds thereof, he then paid off a $25,000 note of F.M. Corporation, a subsidiary of Leisure, Inc. organized for the sole purpose of financing engines to put into the boats manufactured by Leisure. Plaintiff again thereby was substituted as creditor in place of defendant bank and has failed to prove that this transaction was a device of the defendant to engage in a usurious transaction.
Thus, we agree with the trial judge that plaintiff's allegations of usury are, in fact, directed not toward the execution of the four notes and debts incurred thereby, but rather upon plaintiff's ultimate purchase of the debts of Leisure Industries, Inc. and the usury laws are inapplicable to these purchases and sale transactions. See 33 Fla.Jur. Usury § 20 (1960).
For the reasons cited hereinabove, the judgment herein appealed is affirmed.
Affirmed.