**In re CONCRETE EXPRESS, INC., d/b/a Mincey's Concrete Pumping & Crane Service, Debtor.**

**CONCRETE EXPRESS, INC., d/b/a Mincey's Concrete Pumping and Crane Service, Plaintiff,**

**v.**

**UNITED STATES of America (INTERNAL REVENUE SERVICE) and Hudson & Peel, Inc., Defendants.**

Bankruptcy No. 87–04581–BKC–SMW.

Adv. No. 88–0002–BKC–SMW–A.

United States Bankruptcy Court, S.D. Florida.

June 20, 1988.

Ronald Neiwirth, Miami, Fla., for debtor/plaintiff.

John L. Britton, Fort Lauderdale, Fla., for Hudson & Peel, Inc.

Jose F. DeLeon, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for the U.S.

### FINDINGS OF FACT AND CONCLUSION OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE having come on to be heard on March 9, 1988, March 14, 1988, and May 11, 1988, upon the Adversary Complaint filed by the above-captioned Debtor to avoid a security interest in the Debtor's accounts receivable held by an account receivable finance company, and additionally to determine the relative priorities of the account receivable finance company and certain tax liens filed by the Internal Revenue Service; and the Court having heard testimony and having examined the evidence presented, observed the

candor and demeanor of the witnesses, and being otherwise fully advised in the premises herein, does hereby file these Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

*A. Count II: Usury*

On June 25, 1986, the above-captioned Debtor, CONCRETE EXPRESS, INC., (hereinafter referred to as "CONCRETE" or "Debtor"), and HUDSON AND PEEL, INC. (hereinafter referred to as "H & P"), entered into a document entitled Account Financing and Security Agreement and a Contract for Financing Services. It is clear from the face of the contract that two separate and severable contracts are contained within the one document. Paragraph 7 of the document clearly sets forth in bold print that the two agreements are severable and that "engagement by client to Hudson and Peel, Inc. for financial services in no way obligates client to borrow funds from Hudson and Peel, Inc. Further, client may terminate the within contract for financial services, according to the terms herein, without affecting its rights to borrow funds secured by the accounts receivable as provided for herein."

Section 1, entitled "Contract for Financial Services", clearly sets forth that H & P affirmatively agreed to provide various services to the Debtor as a matter of course, or upon request of the Debtor, including: providing the Debtor with an aging of all of the Debtor's accounts, creation of an organized ledger card system for all of the Debtor's accounts, follow-up on overdue accounts upon the request of the client, perform credit checks upon certain identified prospective or existing accounts as requested by the client, maintain current financial records concerning deposits and payments made on all of the Debtor's accounts, and to perform other related financial services as further agreed by the Debtor and H & P as they arose.

In consideration for H & P providing the above-listed services and/or information to the Debtor, the Debtor agreed to pay two percent (2%) of the outstanding invoice amount for the first forty-five day period or part thereof, and if such invoice remained unpaid, two percent (2%) of the outstanding invoice amount for each thirty day period or part thereof after the initial forty-five day period. H & P billed the client monthly for these services.

Sections 2 through 4 of the document governs the advance of monies to H & P secured by an assignment of the accounts receivable of the Debtor to H & P as security for the advances made. A review of the contract and of the expert testimony presented by H & P reveals that the substance of Sections 2 through 4 set forth terms and conditions which are ordinary and reasonable within the asset-based lending community for as Paragraph 2 specifically provides that H & P will charge a rate of interest of fifteen percent (15%) per annum on the amounts advanced pursuant to Sections 2 through 4 of the contract. Paragraph 2 also provides that the calculation or characterization of interest shall not be greater than that permitted by state or federal law. While this particular provision by itself is insufficient to avoid an adjudication of usury, it is credible evidence of the parties' intention that usurious interest not be present in the agreement.

Section 6 of the contract, entitled "Termination", provides that either contract may be terminated by either party upon thirty-days notice to the other party. This termination provision entitled the Debtor to withdraw from either contract at any time. If the Debtor felt that it was being charged usurious interest rates at some point, it certainly had the opportunity to terminate either or both contracts. At no time did the Debtor ever terminate or give notice of termination pursuant to Section 6. This is further evidenced that the Debtor was satisfied with the terms of both contracts which it had voluntarily entered into.

The Debtor and H & P entered into these contracts voluntarily and no evidence was presented to the contrary. Furthermore, there has been no evidence placed before this Court which would create an inference of unreasonable or bad faith conduct on the part of H & P, duress or coercion on the

part of H & P or improper inducement by H & P. The contracts were entered into voluntarily at arms length; they are separate and distinct contracts with separate and distinct consideration agreed to under both.

### B. Count I: Relative Priority and Competing Secured Claims

Count I of Plaintiff's Complaint seeks an adjudication that the secured position of H & P is subordinate to an IRS claim against the accounts receivable of the Debtor based on the filing of four tax liens. These liens are summarized as follows:

(a) Tax lien filed June 9, 1987, in OR Book 14514–164, Broward County, Florida, in the amount of $20,507.

(b) Tax lien filed August 14, 1987, in OR Book 14712–31, Broward County, Florida. This was a duplicate lien to that described in (a) above that reflects credit for a payment by the Debtor of $500.

(c) Tax lien filed September 15, 1987, in the amount of $25,614, OR Book 14798–300, Broward County, Florida.

(d) Tax lien filed October 30, 1987, for $18,019, OR Book 14914–779, Broward County, Florida.

The tax liens were properly filed and constitute liens against the property of the Debtor in their aggregate amount. These liens must, however, be viewed in light of the previously perfected lien of H & P as modified by Internal Revenue Code § 6323, 26 U.S.C. § 6323. This section provides for the priority of federal tax liens over other lien claims but further provides for exceptions to the Federal Government's priority if certain requirements are met. These requirements are discussed below as Conclusions of Law.

Both the IRS and H & P, as Defendants, introduced evidence concerning the relative priorities of their competing secured claims in light of the safe harbor contained in Internal Revenue Code 6323(c). The Court allowed evidence to be offered on three different dates, March 9, 1988, March 14, 1988, and May 11, 1988. During the first trial, the validity of the H & P lien was never challenged, only the priority with respect to the IRS liens. The IRS never filed a crossclaim against H & P disputing the validity of the H & P lien. Plaintiff's Complaint challenged the priority of H & P in light of the IRS tax liens. The Post–Trial Memorandum of the IRS argues that H & P failed to provide the Court with sufficient evidence of the existence of a validly perfected security interest. Although not at issue upon the pleadings herein, the Court finds that H & P has a perfected security interest in and to the accounts receivable of the Debtor pursuant to the Uniform Commercial Code as adopted in Florida. FLA.STAT. section 679.401 (1987).

H & P and the IRS have also presented evidence concerning the creation date of particular accounts receivable of the Debtor which are secured by the validly perfected lien of both H & P and the IRS. H & P has presented this Court with invoices created by H & P in the ordinary course of its business which demonstrate the creation and amount of accounts receivable of the Debtor on a day-by-day basis. The IRS, however, has presented this Court with nothing more than financial summaries, trial balances and other financial records of the Debtor which do not identify with any specificity the creation, existence, payment or balance of any of the accounts in question. The Court finds the evidence of H & P more credible and specific than the evidence presented by the IRS concerning the creation of accounts receivable during relevant safe-harbor periods set forth in Internal Revenue Code § 6323(c). The evidence demonstrates that H & P advanced sums which were secured by receivables created during the period from September 15, 1987 through October 31, 1987 in the amount of $51,009. In addition to these amounts, H & P was also assigned $48,102.05, between November 1, 1987 through December 15, 1987, the third safe harbor period.

### CONCLUSIONS OF LAW

### A. Usury

Count II, the Usury Count, travels upon Florida Statutes 687.02 and 687.071. Sec-

tion 687.02 of the Florida Statutes declares that any contract for the payment of interest upon a loan or other obligation which charges a rate of interest that exceeds eighteen percent per annum simple interest is usurious. Plaintiff has the burden of proof of all elements of the prohibition in order to sustain a finding of usury under the Statute. *Davanzo v. Miami National Bank,* 301 So.2d 797 (Fla.App.1974). Consistent with the Findings of Fact above, Plaintiff has failed to meet this burden because Plaintiff's theory rises or falls upon this Court determination of whether the Account Financing Security Agreement and Contract for Financing Services is one all encompassing contract or two severable contracts incorporated into one document. On the face of the document, it is clear that in actuality they are two separate contracts for distinct and severable services and the respective consideration therefor. The contract requiring the payment of interest is contained in Sections 2 through 4 and provides that the amount of interest payable on the outstanding balance of the monies advanced by H & P is to be fifteen percent (15%). The other contract, for financing services, provides for a specific fee based on a percentage formula as consideration for H & P rendering certain financial services to the Debtor. Plaintiff has presented no evidence which would prove that the Accounts Financing Security Agreement alone provides for, or actually has created, the usurious interest rate alleged.

Based on this Court's finding that the Contract for Financing Services is a separate and distinct contract from the Account Financing and Security Agreement, Plaintiff's Complaint under Section 687.02 must fail and Judgment shall be entered for the Defendant.

Plaintiff also seeks an adjudication by this Court that the interest rates in the two severable contracts violates the Criminal Usury Section of the Florida Statutes, Section 687.071. Once again, in order for this Court to determine that criminal usury exists as outlined in Section 687.071, Plaintiff

must prove to this Court that the two contracts discussed herein are actually one contract, and not two contracts contained within one document. This Court has found contra and, therefore, Plaintiff must also fail under this section of the Florida Statutes. Judgment will be entered for Defendant on the allegations contained in Count II of the Complaint.

## B. Priority Dispute Between H & P and the IRS

Initially, it must be noted that this Court is placed in an interesting procedural posture because it is forced to decide the relative priorities of two competing claimants which are not, procedurally, adversaries. This priority dispute is brought before the Court upon the Debtor's Adversary Complaint seeking to render the H & P lien subordinate to the IRS liens. This, alleges Plaintiff, renders H & P's claim unsecured because it would be valued out since it is alleged that the relevant receivables total less than the existing IRS liens.[1] As set forth more fully above in this Court's Findings of Fact, the IRS has filed four tax liens which create a secured claim against all the property of the Debtor. This secured claim is subject to other secured claims which were perfected prior in time to the filing of the liens if the provisions of Internal Revenue Code § 6323(c) are invoked. Internal Revenue Code § 6323(c), provides a safe harbor for certain commercial financing transactions which grant a security interest in "qualified property" pursuant to a "commercial transactions financing agreement." The safe harbor protects the priority of the commercial financeer from the generally superior tax lien claim of the United States of America. This rule is commonly referred to as the "forty-five day rule."

Section 6323 defines a commercial transaction financing agreement as, "an agreement entered into by a person in the course of his trade or business (i) to make loans to the taxpayer to be secured by commercial financing security acquired by the taxpayer

---

**1.** Although Plaintiff does not cite authority for the proposition, it is assumed that Plaintiff calls upon Section 506(a) of the Code to support this conclusion.

in the ordinary course of his trade or business." Commercial financing security is defined as, (i) "paper of a kind ordinarily arising in commercial transactions, (ii) accounts receivable, ..." 6323(c)(2)(D). "Qualified property" used in conjunction with .the term commercial transaction financing agreement is defined as, "only commercial financing security acquired by the taxpayer before the forty-sixth day after the date of tax lien filing." 26 U.S.C., § 6323(c)(2)(B).

In order for the Plaintiff to have successfully proved the allegations contained in Count I, it would have had to offer evidence not only of the existence of a commercial transaction financing agreement between the Debtor and H & P, but it would have had to introduce evidence as to the date of creation of accounts receivable, on an account-by-account basis, at the time of the filing of the Bankruptcy Petition.

Every opinion which this Court has reviewed holds that a commercial lender who takes a security interest in after-acquired inventory and accounts receivable (as is the case here) may only successfully utilize the safe harbor contained in § 6323(c) if the security interest was taken prior to or within the forty-five day period *and if* the "commercial financing security" was acquired by the taxpayer before the forty-sixth day after the date of the tax lien filing. *See*, § 6323(c)(2)(B); Volume 13, *Mertens, The Law of Federal Income Taxation*, § 548.30 ("this section is limited to cases in which loans or purchases are made later than forty-five days after the tax lien filing ... and only where the inventory, accounts receivable, etc., are acquired before the forty-five days have elapsed"); *Rice Inv. Co. v. U.S.*, 625 F.2d 565 (5th Cir.1980); *Shawnee State Bank v. United States*, 735 F.2d 308 (8th Cir.1984); *Tunxis Corp. v. United Bank & Trust Co.*, 19 B.R. 256 (Bkrtcy.D.Conn.1982); *J.D. Court, Inc. v. U.S.*, 712 F.2d 258 (7th Cir.1983); *Peninsula State Bank v. U.S.*, 211 So.2d 3 (Fla. 1968). All of these cases hold, consistent with the congressional intent clearly set forth in § 6323, that a secured creditor must present proof as to both prongs of the two-part requirement necessary to invoke the safe harbor.

In the case at hand, H & P has offered credible and persuasive evidence showing that it perfected its security interest in receivables prior to or within the forty-five day safe harbor and that the receivables assigned during the second and third safe harbor periods were $51,009 and $48,102.05 respectively.

H & P admits that all of the receivables which were created within the first forty-five day safe harbor period have been satisfied; and, therefore, the first IRS lien in the amount of $20,007 is superior to any subsequently created security interest of H & P.

IRS' second relevant tax lien was filed on September 15, 1987, and a second forty-five day safe harbor period began on that date. That period extended through October 31, 1987, during which time H & P advanced sums and took a secured position in $51,009 worth of the accounts receivable of the Debtor. Therefore, H & P has priority over the IRS to the extent of $51,009 after the IRS' priority of $20,007 is satisfied. After H & P is paid $51,009, the IRS' second tax lien in the amount of $25,614 takes priority over subsequent assignments.

The third safe harbor period began on October 30, 1987, the date of the filing of the last pre-petition tax lien. During this forty-five day safe harbor period, H. & P advanced $48,102.05 which has a priority over the IRS third tax lien.

Thus, the IRS is entitled to the first $20,007 of receivables of the Debtor, H & P is entitled to the next $51,009; the IRS then receives the next $25,614; and H & P would get any remaining receivables up to an additional $48,102.05.

Both secured parties are entitled to assert their liens against currently existing receivables, because this Court has allowed the Debtor to use the cash collateral (as defined in Section 363 of the Bankruptcy Code) of these secured creditors in order to continue to operate its business post petition. This Court previously determined that the IRS and H & P are entitled to

adequate protection of their secured position because of the use of the cash collateral, and this Court has entered two separate Orders granting each party a replacement lien in existing and after-acquired receivables relative to the priorities as ultimately determined by this Court. Therefore, the relative priority status outlined above will be applied to the accounts receivable of the Debtor existing currently until the date of confirmation of a Chapter 11 Plan of Reorganization or as of the date of conversion to a Chapter 7. If a Chapter 11 Plan of Reorganization is ultimately consummated, and such Plan is not a liquidation plan, said Plan must provide for the ultimate payment of both of these secured claims in full pursuant to the terms and provisions of Bankruptcy Code and Rules.

A separate Final Judgment will be entered on this adversary consistent with these Findings of Fact and Conclusions of Law.

### FINAL JUDGMENT

In conformity with the Findings of Fact and Conclusion of Law of even date, it is hereby

ORDERED and ADJUDGED that:

Judgment shall be entered in favor of Defendant, HUDSON & PEEL, INC. on Counts I and II of Plaintiff's Complaint; and Judgment shall be entered in favor of Plaintiff on Count III of Plaintiff's Complaint to the extent that the UNITED STATES OF AMERICA has a valid lien to the extent of the first $20,007 of the accounts receivable of the Debtor.