## In re MAY REPORTING SERVICES, INC., Debtor.

### Bankruptcy No. 89–40613–PKE.

United States Bankruptcy Court,
D. South Dakota.

June 20, 1990.

J. Bruce Blake, Blake Law Office, Sioux Falls, S.D., for petitioner.

R.P. Murley, Asst. U.S. Atty., Sioux Falls, S.D., for U.S.A. and I.R.S.

Donald N. Srstka, Sioux Falls, S.D., for First Bank.

## MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

### ACTION

This decision adjudicates the secured status and the priority of two lien claimants as to accounts receivable due the debtor. For the below-outlined reasons, the Court finds both lien creditors perfected their liens and the statutory federal tax lien takes priority over a consensual lien in debtor's accounts receivable 46 days after the tax lien was filed where the accounts receivable did not contractually come into existence until after the 45th day. The Court maintains jurisdiction under 28 U.S.C. § 1334, and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K). This memorandum constitutes findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure and Bankruptcy Rule 7052.

### FACTUAL BACKGROUND

May Reporting Services, Inc. ("May" or "debtor"), is a South Dakota corporation engaged in court reporting services. Jerry J. May is its president. May maintains a large client base wherein it is on constant call to perform reporting services throughout the State of South Dakota. Some of its services are performed simply by an interested attorney calling May to request the presence of a court reporter. Other services are contracted for with May.

This Court has a court reporting service contract with May, and May reporters, Deborah Beuckens and Terri Lembcke, were present reporting on the hearing. The Court, sua sponte, inquired of all counsel present whether or not they objected to a May reporter transcribing the hearing. None of the attorneys objected to Deborah Beuckens transcribing the morning hearing. The attorneys showered Deborah with many accolades, noting she had been a credible court reporter for more than ten years. Terri Lembcke, reporting the afternoon hearing, was held in equal great esteem. Attorney R.P. Murley expressed sympathy for the reporters present transcribing the hearing on this matter. With no objections of any of the counsel present or the bench, the reporters transcribed the hearing. May filed bankruptcy December 21, 1989.

First Bank of South Dakota ("First Bank") loaned May more than $13,000 for its business purposes. First Bank took a blanket security interest in property of May, including, but not limited to, inventory, equipment, and accounts. First Bank filed a U.C.C. 1 statement with the South Dakota Secretary of State on November 26, 1984, and a continuation statement of its security interest on November 15, 1989. First Bank filed a proof of claim for $8,032.00.

May is indebted to the Internal Revenue Service ("IRS") for trust fund taxes in the amount of about $15,000. On April 3, 1989, the IRS filed a federal tax lien on May, in the amount of $5,640.49, with the South Dakota Secretary of State.

The commodity May sells is its services. Attorneys willingly decide whether or not to call May, and May decides whether or not to accept the court transcribing offer, each having the option to not accept. May's clients pay after the services are performed. May's custom is to bill the clients at the end of the month and await payment. Some attorneys maintain the practice of not paying May until the case which May's court reporters took a deposition at settles. As cases can take years to settle through the court systems and the appellate processes, many of May's accounts receivable are aged. Some of the accounts are beyond the statute of limitations for enforcement, while others are due from attorneys disbarred or suspended. May's billing practice built the sizable accounts receivable to $26,889.24 on the petition date. $5,650.37 of this amount is from May 18, 1989, to the petition date.

### ISSUE

Whether and to what extent First Bank and the IRS have an interest in debtor's accounts receivable where First Bank prop-

erly filed its consensual lien first, followed by the IRS's statutory lien.

## CONCLUSIONS OF LAW

### I. Perfection.

■ Both First Bank and the IRS claim perfection in May's accounts receivable. In affixing whether a creditor's lien is perfected or choate for federal tax purposes, first look to local law setting forth lien procedures, then determine the interest under federal law lien priority. *Hartford Provision Co. v. U.S.*, 579 F.2d 7, 9 (2d Cir.1978); *Mantovani v. Fast Fuel Corp.*, 494 F.Supp. 72, 75 (S.D.N.Y.1980). Analyzing secured status and claims priority is set out in a framework of bank perfection, tax perfection, and allocating priorities by applicable law.

### A. Consensual Lien.

Generally, perfection of a consensual lien is controlled by state law. *In re Hogg*, 76 B.R. 735, 744 (Bankr.D.S.D.1987), *aff'd*, 877 F.2d 691 (8th Cir.1989). Uniform Commercial Code ("U.C.C.") § 9–102(1)(a) subjects the "soft collateral" of accounts receivable to Article 9 because the article applies to "any transaction ... intended to create a security interest in personal property or fixtures, including goods, documents, instruments, general intangibles, chattel paper or accounts." S.D.C.L. § 57A–9–102 (hereafter, U.C.C. sections referred to are those adopted by South Dakota and may be located in the South Dakota Codified Laws by adding "57A–" to the U.C.C. section cited). A security agreement may provide that an obligation can be secured by property the debtor acquires after execution of the agreement. U.C.C. § 9–204. First Bank's blanket security interest in May's inventory, equipment, and accounts constitutes chattel collateral, the accounts receivable having been acquired after execution of the security agreement.

■ A security interest sufficiently perfected under state law to be protected against an unsecured judgment lien is "perfected" for federal tax lien purposes. *Donald v. Madison Industries, Inc.*, 483

F.2d 837, 842 (10th Cir.1973). A financing statement, the familiar U.C.C. 1, noticing an interest in chattels, except timber to be cut or minerals, is properly filed with the South Dakota Office of the Secretary of State. U.C.C. § 9–401. First Bank complied by filing both its financing statement on November 26, 1984, and the continuation statement on November 15, 1989, with the South Dakota Office of the Secretary of State. A collateral description is sufficient if it reasonably identifies what is described. U.C.C. § 9–110. The term, "accounts," reasonably describes May's accounts receivable. First Bank's interest is protected against an unsecured creditor's judgment lien. U.C.C. § 9–301. First Bank has a perfected security interest in debtor's accounts receivable for federal tax lien priority purposes. No creditor claims to occupy a perfected security interest in May's chattels prior to First Bank's filing.

### B. Statutory Lien.

26 U.S.C. § 1, *et al.*, the Internal Revenue Code ("I.R.C."), sets forth federal tax statutes. The IRS claims certain I.R.C. sections give it a priority in debtor's accounts receivable.

■ The federal tax lien filed April 3, 1989, gives the IRS a powerful secured interest. The federal tax lien is a constitutional exercise by Congress of its power to lay and collect taxes and represents supreme law of the land. *State of Michigan v. U.S.*, 317 U.S. 338, 340–41, 63 S.Ct. 302, 302–03, 87 L.Ed. 312 (1943); *U.S. v. Second Nat'l Bank of N. Miami*, 502 F.2d 535, 545 (5th Cir.1974), *cert. denied*, 421 U.S. 912, 95 S.Ct. 1567, 43 L.Ed.2d 777 (1975). Legislation aiding collecting government revenues should be liberally construed, and federal tax liens are statutory collection provisions to be strictly followed according to federal law. *Herndon v. U.S.*, 501 F.2d 1219, 1220–23 (8th Cir.1974); *U.S. v. Heasley*, 283 F.2d 422, 428 (8th Cir.1960); *U.S. v. Phillips*, 267 F.2d 374, 378 (5th Cir.1959); *Bank of Nevada v. U.S.*, 251 F.2d 820, 824 (9th Cir.1957), *cert. denied*, 356 U.S. 938, 78 S.Ct. 780, 2 L.Ed.2d 813 (1958).

A federal tax lien, arising under 26 U.S.C. § 6321, gives the United States a lien "upon all property and rights to property" of the taxpayer owned when the lien arose and acquired afterwards. *Glass City Bank v. U.S.*, 326 U.S. 265, 267, 66 S.Ct. 108, 110, 90 L.Ed. 56 (1945); *Shawnee State Bank v. U.S.*, 735 F.2d 308, 311 (8th Cir.1984); *Rice Inv. Co. v. U.S.*, 625 F.2d 565, 568 (5th Cir.1980). The lien attaches to the debtor's property which is otherwise exempt from levy under state law. *Knox v. Great West Life Assur. Co.*, 212 F.2d 784, 785 (6th Cir.1954); *U.S. v. Ott*, 166 F.Supp. 13, 18 (E.D.Mich.1958); *Matter of Beard*, 112 B.R. 951, 954 (Bankr.N.D.Ind. 1990).

The lien in favor of the United States upon the debtor's property and rights arises when the liable person neglects or refuses to pay the tax after demand. 26 U.S.C. § 6321. Even a federal tax lien filed from a jeopardy, or rushed assessment motivated by a belief that the taxpayer will soon be hiding or dissipating assets, is a valid statutory lien. *Matter of Carlucci*, 49 B.R. 679, 681 (Bankr.S.D.Ga. 1985). Should the debtor's conduct with respect to federal tax debts be so willful and evasive, such debts are nondischargeable. *In re Fernandez*, 112 B.R. 888, 892 (Bankr.N.D.Ohio 1990). The choate federal tax lien is a potent IRS collection tool.

C. General Limits of a Federal Tax Lien.

The federal tax lien's Samson-like powers have limits. The federal tax lien is effective only if it is choate. A tax lien is choate when nothing else need be done to perfect. *In re Major*, 67 B.R. 36, 39 (Bankr.W.D.Ky.1986). The lien need not specifically describe any property. *Shaw v. U.S.*, 331 F.2d 493, 497 (9th Cir.1964).

I.R.C. § 6323 curbs Section 6321's federal tax lien über alles strength by imposing filing requirements under certain circumstances and creating limited exemptions. While a relevant specific exemption is detailed below, general Section 6323 information properly focuses the scope of Section 6321's lien.

Section 6321's lien is invalid against any mortgagee, pledgee, purchaser, or judgment creditor until lien notice is filed. 26 U.S.C. § 6323; *Steven v. Union Trust Co. of D.C.*, 316 F.2d 687, 692–93 (D.C.Cir.1963). While muzzling Section 6321's lien bite, Section 6323's overriding purpose is to ensure prompt revenue collection. *U.S. v. Kimbell Foods, Inc.*, 440 U.S. 715, 726–27, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979). The federal tax lien upon the delinquent taxpayer's property is created and perfected on the date of assessment and is entitled to priority as to all liens except those persons and liens specifically enumerated by statutes, such as I.R.C. § 6323. *Eskanos v. Alpha 76, Inc.*, 712 F.Supp. 819, 821 (D.Colo.1989).

Section 6323's validity of a tax lien against certain creditors only after notice is in accord with commercial lending's underlying policy of providing adequate notice to other creditors of the government's security interest. *In re D.G. & Assocs., Inc.*, 9 B.R. 94, 96 (Bankr.E.D.Tenn.1981). Modernized by the Federal Tax Lien Act of 1966, the tax lien noticing system attempts to conform federal tax lien provisions to the U.C.C.'s concepts. *Pine Builders, Inc. v. U.S.*, 413 F.Supp. 77, 80 (D.Va.1976); S.Rep. No. 1708, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.Code Cong. & Admin. News 3722.

Notice of a federal tax lien protects would-be purchasers and others against secret liens in the government's favor. *See Randall v. Colby*, 190 F.Supp. 319, 337–38 (D.C.Iowa 1961); *Pipola v. Chicco*, 169 F.Supp. 229, 233 (S.D.N.Y.1959), *modified on other grounds*, 274 F.2d 909 (D.C.Iowa 1960); *Sams v. Redevelopment Auth. of New Kensington*, 436 Pa. 524, 526, 261 A.2d 566, 568 (1970). Section 6323 expressly follows the states' notice systems requiring federal tax liens be filed in the office designated by the laws of the state. 26 U.S.C. § 6323(f)(1)(A).

D. Perfection of a Federal Tax Lien When a Competing Consensual Lien Exists.

The federal tax lien filed where it would perfect under state law perfects. *In*

*re Elliott,* 67 B.R. 866, 868 (Bankr.D.R.I. 1986). A federal tax lien, like a security agreement, must be filed with the South Dakota Office of the Secretary of State to provide adequate notice of an interest in chattels. U.C.C. § 9–401. The IRS's federal tax lien, filed April 3, 1989, with the secretary of state, perfected the IRS's interest. The federal tax lien attaches to accounts receivable. *In re M. Gallo, Inc.,* 113 B.R. 83, 84 (Bankr.M.D.Fla.1990). Both First Bank's and the IRS's interests are perfected in May's accounts receivable under federal law dictating state law be applied, and both creditors complied by filing notices with the secretary of state as required by the U.C.C.

## II. Bankruptcy Code and Priorities.

The Federal Tax Lien Act is not inconsistent with federal insolvency statutes. *Carter v. Carter,* 681 F.Supp. 323, 328–30 (E.D.Va.1988); *see* J. Van Patten and R. Puetz, *Bankruptcy and Environmental Obligations: The Clash Between Private Relief and Public Policy,* 35 S.D.L.Rev. 220–50 (Vol. 2, 1990) (the article discusses bankruptcy's mesh with another Congressionally pervasive area, environmental law). 26 U.S.C. § 6323 and 11 U.S.C. § 545 require the IRS take certain actions to perfect its lien so that it is unavoidable in bankruptcy. *In re Krump,* 89 B.R. 821, 826 (Bankr.D.S.D.1988); *Matter of Coan,* 72 B.R. 483, 487 (Bankr.M.D.Fla.1987).

### A. Secured Claim.

11 U.S.C. § 506(a) limits a creditor's secured claims to the value of its interests in a debtor's property, and claims in excess of this value are deemed unsecured. The relevant time for assessing the value of secured claims is at the time of filing the bankruptcy petition. *In re Dente/Pender,* 60 B.R. 164, 165–66 (Bankr. M.D.Fla.1986). State law determination of interests normally establishes priority for Section 506(a) secured purposes. *Hogg,* 76 B.R. at 744; *but see* 11 U.S.C. § 544. The extent of a secured claim under Section 506(a) is also determinative of the adequate protection warranted and cash collateral

requirements the debtor currently operates under.

Property acquired by the debtor after the commencement of the bankruptcy case is not subject to any lien from a security agreement entered into by the debtor before the case was started. 11 U.S.C. § 552(a). Unless the case's equities warrant otherwise, a security agreement entered into prior to the bankruptcy petition filing is a valid security agreement to the extent provided by the agreement and by nonapplicable bankruptcy law. 11 U.S.C. § 552(b). Section 552's scheme, in essence, means the bankruptcy filing severs prepetition interests with the exception that security interests and property acquired prior to the filing extend to proceeds of such property acquired after filing. *Matter of Mattice,* 81 B.R. 504, 507 (Bankr. S.D.Iowa 1987). Such Section 552(b) proceeds would be cash collateral as defined under Section 363, which would require the debtor to segregate and refrain from using them until it either obtained the consent of each entity having an interest in the proceeds or court permission and conditional use of those proceeds on adequate protection were granted.

The United States has a potential interest in accounts receivable acquired by debtor post-petition because Section 552(a) applies only to liens arising from consensual security agreements. *In re National Fin. Alternatives, Inc.,* 96 B.R. 844, 849 (Bankr.N.D.Ill.1989). United States tax liens are entirely statutory. *Heasley,* 283 F.2d at 428; *Bank of Nevada,* 251 F.2d at 823–24. A tax lien does not arise from a security agreement. Therefore, to the extent that the IRS's tax lien is not voided under 11 U.S.C. § 506(d), it continues to attach to property obtained by May after commencement of this case, subject to any interest of First Bank in post-petition proceeds allowed per 26 U.S.C. § 6323(c). *National,* 96 B.R. at 849. The filing of a bankruptcy petition, however, creates a separate estate constituting the debtor's property. 11 U.S.C. § 541. The separate estate, bankruptcy equities entitling the debtor to a fresh start, and precedence

sever the interest of both creditors in post-petition accounts receivable absent traceable prepetition proceeds.

### B. Federal Law Applied When Determining Certain Lien Priorities.

 State law governs the majority of conflicts between lienholders competing for the same property, but, when an IRS tax lien is involved, federal law, specifically I.R.C. § 6323, outlines rights of private creditors as to the tax lien. *Medaris v. U.S.*, 884 F.2d 832, 833 (5th Cir.1989); *U.S. v. Bank of Celina*, 721 F.2d 163, 164 (6th Cir.1983); *Sgro v. U.S.*, 609 F.2d 1259, 1260 (7th Cir.1979). Federal law dictates the priority of the two perfected interests in the instant matter.

### III. Federal Tax Lien Exemptions.

26 U.S.C. § 6323 enumerates at least 10 transactions where the federal tax lien yields its generally superior lien position. U.C.C. § 9–301(4) enumerates an exemption concerning disbursing advances under a security agreement legislated in 26 U.S.C. § 6323(c)(4). Other exemptions, i.e., concerning securities and motor vehicles, are inapplicable. A narrow exception enjoyed by commercial lenders is pertinent to the instant matter.

### A. 26 U.S.C. § 6323(c)'s Outline.

 A creditor seeking to avoid the validity of the federal tax lien shoulders the burden of proof under Section 6323(c). *In re Concrete Exp., Inc.*, 87 B.R. 718, 722 (Bankr.S.D.Fla.1988); *Matter of Tunxis Corp.*, 19 B.R. 256, 260 (Bankr.D.Conn. 1982). The creditor must establish that its interest became protected and specific under local law. *Ceco Corp. v. U.S.*, 554 F.Supp. 569, 571 (D.C.Minn.1982). First Bank met its burden, proving its security interest was specific in the accounts receivable and protected against an unsecured creditor under South Dakota law.

 I.R.C. § 6323 limits Section 6321's tax lien impact on holders of perfected security interests in a debtor's property. The IRS's interest is inchoate against such creditors until the tax lien notice is properly filed. 26 U.S.C. § 6323(a). The IRS's April 3, 1989, lien perfected the government's interest. Section 6323(c), interpreted by 26 C.F.R. § 301.6323(c)–1, preserves the priority of certain perfected security interests in property acquired by the debtor prior to or during the 45–day period post-federal-tax-lien filing and in the proceeds of that property. First Bank perfected its interest before the IRS filed its tax lien notice. The instant matter pits First Bank against the IRS over the application of 26 U.S.C. § 6323(c) to the accounts receivable acquired by May after tax lien filing.

Section 6323(c) specifically addresses accounts receivable in terms of protection for certain commercial transactions financing agreements. 26 U.S.C. § 6323(c) states the following:

> (c) *Protection for certain commercial transactions financing agreements, etc.—*
>
> (1) In general.—To the extent provided in this subsection, *even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid with respect to a security interest which came into existence after tax lien filing but which—*
>
>> (A) *is in qualified property covered by the terms of a written agreement entered into before tax lien filing and constituting—*
>>
>>> (i) *a commercial transactions financing agreement,*
>>>
>>> (ii) a real property construction or improvement financing agreement, or
>>>
>>> (iii) an obligatory disbursement agreement,
>>> and
>>
>> (B) is protected under local law against a judgment lien arising, as of the time of tax lien filing, out of an unsecured obligation.
>
> (2) Commercial transactions financing agreement.—For purposes of this subsection—
>
>> (A) Definition.—*The term "commercial transactions financing agreement" means an agreement* (entered

into by a person in the course of his trade or business)—

(i) *to make loans to the taxpayer to be secured by commercial financing security acquired by the taxpayer in the ordinary course of his trade or business*, or

(ii) to purchase commercial financing security (other than inventory) acquired by the taxpayer in the ordinary course of his trade or business; but such an agreement shall be treated as coming within the term *only to the extent that such loan or purchase is made before the 46th day after the date of tax lien filing or (if earlier) before the lender or purchaser had actual notice or knowledge of such tax lien filing.*

(B) Limitation on qualified property. *—The term "qualified property", when used with respect to a commercial transactions financing agreement, includes only commercial financing security acquired by the taxpayer before the 46th day after the date of tax lien filing.*

(C) *Commercial financing security defined.*—The term "commercial financing security" means (i) paper of a kind ordinarily arising in commercial transactions, (ii) *accounts receivable*, (iii) mortgages on real property, and (iv) inventory.

(D) Purchaser treated as acquiring security interest.—A person who satisfies subparagraph (A) by reason of clause (ii) thereof shall be treated as having acquired a security interest in commercial financing security. (Emphasis added.)

The statute expressly provides exceptions to the federal tax lien.

B. 26 U.S.C. § 6323(c)'s General Application.

Section 6323(c) provides a safe harbor for certain commercial financing transactions, granting a security interest in "qualified property" pursuant to a "commercial transactions financing agreement." *Concrete*, 87 B.R. at 721. The safe harbor protects the commercial lender's priority from the

generally senior federal tax lien. This rule is commonly referred to as the 45–day rule. *Id.* A commercial financier's security interest in accounts receivable utilizes Section 6323(c)'s safe harbor if the security interest was taken prior to or within the 45–day period and if the debtor acquired the commercial financing security before the 46th day after the date of the federal tax lien filing. Section 6323(c)(2)(B); 13 J. Mertens, *Law of Federal Income Taxation* § 548.30 (1989).

By statute, an IRS lien is invalid against a security interest arising within 45 days post-tax-lien filing in qualified property covered by a written commercial transactions financing agreement executed prior to the tax lien filing. 26 U.S.C. § 6323(c)(1)(A)(i). A "commercial transactions financing agreement" is defined as an agreement entered into by a person in the course of his trade or business to make loans secured by commercial financing security in the ordinary course of business. 26 U.S.C. § 6323(c)(2)(A)(i). First Bank's business loan to May, in the ordinary course of business, qualifies. Accounts receivable are protected commercial financing security. 26 U.S.C. § 6323(c)(2)(C)(ii). Shielding qualified property against the otherwise superior federal tax lien extends only until such agreement is consummated and security acquired within 45 days after the federal tax lien is filed, or earlier if the lender actually knew of the tax lien filing. 26 U.S.C. § 6323(c)(2). First Bank lacked knowledge of the lien filing, so First Bank's first perfected security interest maintains senior priority in May's accounts receivable until May 18, 1989, if all other provisions of Section 6323(c) are met.

C. 26 U.S.C. § 6323(c) Applied to First Bank's Loan.

First Bank's 1984 financing agreement, renewed in 1989, is a commercial transactions financing agreement, and May's accounts receivable, covered by that agreement, are commercial financing security. The IRS's federal tax lien of April 3, 1989, is choate because the 45–day period protecting "qualified property," constituting

First Bank's collateral of May's accounts receivable, terminated May 18, 1989. First Bank qualifies for Section 6323(c)'s limited safe harbor.

26 U.S.C. § 6323 fails to expressly indicate whether contract rights (i.e., an order for court reporting services), to which the right to payment is yet unearned, may constitute as qualified property. Fixing an exact date for qualified property is hampered when contract rights involved would create accounts receivable. Unquestionably, there is a right to payment upon completion of the services performed, based either in contract theory or on a theory of quantum meruit, to avoid unjust enrichment. *See* E. Farnsworth, *Contracts* §§ 2.20, 12.19 (1982).

Accounts receivable have been held to not be acquired for Section 6323's purpose until the work has been performed. *Shawnee*, 735 F.2d at 311; *Texas Oil & Gas Corp. v. U.S.*, 466 F.2d 1040, 1049–51 (5th Cir.1972), *cert. denied*, 410 U.S. 929, 93 S.Ct. 1367, 35 L.Ed.2d 591 (1973); *U.S. v. N. Side Deposit Bank*, 569 F.Supp. 948, 958 (W.D.Pa.1983). More current authority deems a taxpayer acquires a contract right when the contract is made, rather than at the time the right to payment is earned by a performance. *National*, 96 B.R. at 851; 26 C.F.R. § 301.6323(c)–1(d). The *National* court held that, to the extent that accounts receivable acquired by the debtor more than 45 days after filing a notice of tax lien can be considered proceeds of contract rights or inventory acquired by the debtor prior to the 46th day, the consensual lien takes priority over a federal tax lien. *Id.* The creditor maintains the burden to prove the contract right existed prior to the 45–day period expiring.

The contract/accounts receivable question has great significance because accounts receivable, tied to contract rights, are relied upon as valuable, if not the only pledgeable, collateral to commercial lenders loaning money to an entity generating services, not products. Services are an asset which do not tangibly exist until performance. Fear of federal tax lien priority preemption may have a chilling effect on commercial lending to the growing services industry. Albeit, lenders know of the IRS lien law, and 45–day rule exemptions are strictly construed and narrowly defined. *In re Gary & Connie Jones Drugs, Inc.*, 35 B.R. 608, 613 (Bankr.D.Kan.1983).

*National* is enlightening, but the Court neither endorses nor rejects its doctrine because the instant matter involves no contracts specific enough to fit under the *National* rule. May's clients telephone for May's presence sporadically. May's lengthy relationship with several clients is insufficient to prove binding enforceable contracts entered prior to the 46th day to which proceeds were received after the 45th day. Both May and the attorney contracting for the services can withdraw at will. Any amounts under such informal agreements would be mere speculation, insufficient to set a specific dollar amount upon. This Court's services contract with May varies month-to-month, recently as much as $1,200. No evidence admitted established May entered into any definite contracts within the 45–day period to which proceeds were received after the 45th day.

IV. Conclusion.

Section 6323(c) allocates accounts receivable arising from services performed by May reporters on or prior to May 18, 1989, first to First Bank and second to the IRS. First priority in accounts receivable accruing from services performed from May 19, 1989, to the petition date belong to the IRS. Not all the accounts receivable are collectible. Accounts receivable beyond the six-year statute of limitations or due from inactive South Dakota attorneys or attorneys being disciplined are deemed noncollectible and the secured amounts reduced accordingly. Collectible accounts receivable until May 18, 1989, total $10,576.95, and from May 19, 1989, to December 21, 1989, $2,658.00 exists. First Bank's interest is senior in the $10,576.95. First Bank's petition-date claim of $8,032.00 is fully secured under Section 506(a). The remaining $2,544.95 and the $2,658.00, totaling $5,202.95, is the IRS's 11 U.S.C. § 506(a) secured amount.

The Court shall enter an appropriate order.