In re DORROUGH, PARKS
& COMPANY, Debtor.

Ann MOSTOLLER, Trustee, Plaintiff,

v.

ASPEN MARINE GROUP, Bank of East Tennessee, Union Planters Bank, and The United States of America, Defendants.

No. 3:94–cv–732.
Bankruptcy No. 92–3209.
Adv. No. 92–3213.

United States District Court,
E.D. Tennessee,
at Knoxville.

June 2, 1995.

Carol C. Priest, U.S. Dept. of Justice, Tax Div., Washington, DC, for U.S.

John A. Lucas, Hunton & Williams, Knoxville, TN, for First American Nat. Bank.

Doris C. Allen, Bernstein, Stair & McAdams, Knoxville, TN, for Union Planters Nat. Bank.

Ann Reilly Mostoller, Trustee, Mostoller and Stulberg, Oak Ridge, TN.

## MEMORANDUM OPINION

JARVIS, Chief Judge.

This is an appeal from an order of the Bankruptcy Court. The appeal arises out of an involuntary Chapter 7 case commenced against the debtor, Dorrough, Parks & Company ("Dorrough Parks"), on April 27, 1992. Jurisdiction is based on 28 U.S.C. § 158(a) and is not in dispute. The Bankruptcy Court held that a federal tax lien asserted by the appellant, the Internal Revenue Service ("IRS"), did not take priority over a security interest asserted by appellee, Union Planters National Bank ("Union Planters"). For the reasons that follow, the order of the Bankruptcy Court will be affirmed.

The material facts in this case are contained in stipulated facts, exhibits, and deposition transcripts submitted to the Bankruptcy Court. Dorrough Parks was an accounting firm that provided general accounting services to clients until early 1992. As noted, an involuntary Chapter 7 petition was commenced against Dorrough Parks on April 27, 1992, and an order for relief was granted under Chapter 7 on June 18, 1992. The bankruptcy trustee subsequently brought an adversary proceeding in the Bankruptcy Court. The trustee alleged that between the filing of the involuntary petition and the entry of the order for relief, Steven Dorrough, then the managing partner of the debtor, on behalf of the debtor, settled a $285,000 account receivable for professional fees owed to the debtor by defendant Aspen Marine Group ("Aspen Marine"). Specifically, the trustee alleged that Mr. Dorrough collected only $250,000 of the receivable and forgave the balance. Of the amount collected, a significant portion, approximately $235,603, remained subject to a resolution of the Union Planters/IRS lien priority issue raised by the trustee's complaint. The Bankruptcy Court's resolution of this competing priority issue is the subject of this appeal.

Union Planters, as the successor to the Bank of East Tennessee, is the owner and holder of three promissory notes in the original principal amounts of $135,000, $300,000, and $250,000, respectively. These promissory notes are secured according to a security agreement entered into on December 5, 1988, the date the original $135,000 note was executed. The security agreement encumbers all of the personal property of Dorrough Parks and is perfected by UCC-1 Financing Statements filed with the Tennessee Secretary of State and with the Knox County Register's Office.

On October 14, 1992, Union Planters' predecessor filed a proof of claim in this matter indicating a total indebtedness owed to it by Dorrough Parks of $1,061,323.96. As of May 7, 1993, the balance due by Dorrough Parks on Union Planters' notes was $749,535.74.

On February 14, 1992, the IRS filed a Notice of Federal Tax Lien, asserting a statutory tax lien on all property and rights to property belonging to Dorrough Parks in the total amount of $64,704.32, plus interest. A proof of claim was filed by the IRS on July 30, 1992, indicating a secured indebtedness owed to it by Dorrough Parks in the amount of $74,268.12.

The parties acknowledge that the issue in this case turns on the legal nature of the account receivable—*i.e.*, whether or not it arose pursuant to a pre-existing contract—that was due, owing and ultimately paid by Aspen Marine. In order to resolve this issue, the Bankruptcy Court thoroughly reviewed the evidence in this case, including the parties' stipulations, and made findings in its opinion regarding the deposition testimony of Mr. Dorrough and Ella Bautwell Chesnutt.[1] Ms. Chesnutt began work as an em-

---

1. The parties vigorously dispute the application of the law to the facts found by the Bankruptcy Court. In its brief, the IRS sets forth certain stipulations of fact purportedly made to the Bankruptcy Court. However, as noted by Union Planters, the stipulation of facts that was ulti-

mately agreed to and filed with the court contained four stipulations, not including those alleged by the IRS regarding the substance of Mr. Dorrough's and Ms. Chesnutt's deposition testimony. Rather, the stipulations relied upon by the Bankruptcy Court merely noted that the de-

ployee of Aspen Marine about the time Dorrough Parks began the transactional work that resulted in the $285,000 receivable.[2] Before she joined Aspen Marine, Ms. Chesnutt provided legal services to Aspen Marine in her capacity as a private attorney. Mr. Dorrough held the initial discussions with Aspen Marine that led to his firm's engagement for the transactional work. Ms. Chesnutt, *after* she joined Aspen Marine, ultimately negotiated the final price for the public offering work. Thus, the Bankruptcy Court correctly held that Ms. Chesnutt could not testify about the routine accounting work that the debtor performed for Aspen Marine and could only speculate about the substance of the parties' initial discussions that occurred when the debtor was hired for the securities offering.[3] Indeed, when Aspen Marine first hired Dorrough Parks, the parties did not agree to a specific hourly or monthly rate, and left the final price open in accordance with the "customary practice" of determining the price at the close of the transaction. However, Mr. Dorrough eventually agreed to cap his rate at $15,000 per month.[4] Thus, as the Bankruptcy Court recognized, the parties agreed that Dorrough Parks was to be employed as a transactional accountant and viewed the work as an oral contract to complete a transaction.

### Discussion

Rule 8013, Federal Rules of Bankruptcy Procedure, governs the standard of appellate review of a bankruptcy court's decision.

In a bankruptcy proceeding, the bankruptcy court is the finder of fact. Although bankruptcy rule 8013 provides that "[o]n an appeal the district court or the bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings," the rule also mandates that "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."

*Hardin v. Caldwell (In re Caldwell)*, 851 F.2d 852, 857 (6th Cir.1988). The Bankruptcy Court's "findings of fact [then] should not be disturbed by [this] court ... unless there is 'most cogent evidence of mistake or miscarriage of justice.'" *Slodov v. United States*, 552 F.2d 159, 162 (6th Cir.1977) (quoting *McDowell v. John Deere Indus. Equip. Co.*, 461 F.2d 48, 50 (6th Cir.1972)), *rev'd on other grounds*, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978).

By statute, a federal tax lien is invalid against a security interest arising within 45 days after a tax lien is filed in *qualified* property covered by a written commercial transaction financing agreement executed prior to the tax filing. 26 U.S.C. § 6323. Specifically, § 6323(c) states in part that a tax lien

shall not be valid with respect to a security interest which came into existence after tax lien filing but which—

(A) is in qualified property covered by the terms of a written agreement en-

---

positions of these two individuals fully set forth their testimony with regard to this matter, and are admissible in this proceeding. The Bankruptcy Court considered this testimony and concluded, as noted below, that much of Ms. Chesnutt's testimony regarding the ultimate issue in this case was mere speculation.

**2.** Before that time, beginning in the mid–1980's, Dorrough Parks provided routine accounting services to Aspen Marine, which consisted of two subsidiaries, Supra Sports, Inc. and Marine Sports, Inc. The transactional work related to a proposed public securities offering involving a reverse merger between Marine Sports, Inc. and Aspen Wind, Inc.

**3.** Ms. Chesnutt admitted on cross-examination that her testimony regarding the parties' original agreement amounted to nothing more than speculation and that she did not, in fact, know the terms of that agreement. The Bankruptcy Court considered Ms. Chesnutt's testimony on this issue. Thus, its findings regarding her testimony may not be disturbed unless clearly erroneous. *See* Rule 8013, Federal Rules of Bankruptcy Procedure.

**4.** It is important to note, however, that fees were not in fact paid on a monthly basis. Rather, although they were incurred on an on-going basis and capped at a rate of $15,000 per month, all fees were paid only after the transactional work had ceased.

tered into before tax lien filing and constituting—

(i) a commercial transactions financing agreement, [and]

\* \* \* \* \* \*

(B) is protected under local law against a judgment lien arising, as of the time of tax lien filing, out of an unsecured obligation.

In other words, collateral that constitutes qualified property acquired by a borrower within 45 days after the filing of a federal tax lien is protected from the tax lien. *See State Bank of Fraser v. United States*, 861 F.2d 954, 963–65 (6th Cir.1988). Such qualified property "includes only security acquired by the taxpayer before the 46th day after the date of the lien filing." *See* 26 U.S.C. § 6323(c)(2)(B).

■ It is undisputed that Union Planters had a valid "commercial transactions financing agreement" pursuant to § 6323(c)(2), and that it was an agreement to furnish loans that were secured by commercial financing security acquired by the taxpayer in the ordinary course of its trade or business. However, pursuant to § 6323(c), because the federal tax lien was filed on February 14, 1992, the IRS is entitled to all assets or rights acquired by Dorrough Parks after March 3, 1992, *unless* the account receivable proceeds arose pursuant to a *pre-existing* contract. The IRS acknowledges that if the disputed funds were received by the debtor as payment for work performed under a pre-existing contract, then Union Planters' security interest should prevail over its tax lien. However, the IRS contends that the work performed by the debtor was not performed pursuant to a contract. Rather, it argues that Aspen Marine's payment obligation arose only after the actual work was performed and not pursuant to a pre-existing enforceable contract.

■ On this issue, the Bankruptcy Court held that "there was a meeting of the minds when Aspen Marine hired the debtor: the debtor would provide accounting services to Aspen Marine and Aspen Marine would pay a reasonable fee, determinable at the end of the project, to the debtor." Furthermore,

the Bankruptcy Court held that this meeting of the minds, which included provision for a reasonable fee, was enforceable as a contract and did not fail for lack of definiteness or for the lack of a price term. Under the circumstances, I am constrained to agree with the Bankruptcy Court.

Ms. Chesnutt testified that the final price was negotiated after the transactional work was completed because "that's the way the transactions are done." In Tennessee, " '[a] contract is simply an agreement between two parties, based on adequate consideration, to do or not to do a particular thing.' " *Newton v. Gibalski (In re Gatlinburg Motel Enterprises)*, 127 B.R. 814, 817 (Bankr.E.D.Tenn. 1991) (quoting *Bill Walker & Assoc. v. Parrish*, 770 S.W.2d 764, 771 (Tenn.Ct.App.1989)). Tennessee courts further hold that a contract need not specify a duration, and in such a case, a court can construe the contract as either " 'perpetual or terminable at will.' " *APCO Amusement Co. v. Wilkins Family Restaurants, Inc.*, 673 S.W.2d 523, 528 (Tenn.Ct.App.1984) (quoting 17 Am.Jur.2d *Contracts* § 80 (1964)).

Thus, the IRS's reliance on *In re May Reporting Services, Inc.*, 115 B.R. 652 (Bankr.D.S.D.1990) is misplaced. The *May* case involved a court reporting agency that provided services both to individual clients and to a court. Those services were provided by agreement between the parties, but both parties to the agreement could withdraw at will. The reporting agency billed clients after the services were performed and awaited future payment. The *May* court held that "[n]o evidence admitted established May entered into any definite contracts" to provide court reporting services. 115 B.R. at 660. Instead, clients called May on a sporadic basis and its "lengthy relationship with several clients is insufficient to prove binding enforceable contracts," especially because "[a]ny amounts under such informal agreements would be mere speculation, insufficient to set a specific dollar amount upon." *Id.*

By contrast, Union Planters presented evidence of the lengthy relationship between the debtor and Aspen Marine, as well as evidence that the debtor agreed to perform extensive, technical, and specialized work for

Aspen Marine's public securities offering in return for a reasonable fee. Consequently, the contract was tied to one specific, difficult project, as opposed to the alleged contracts in the *May* case that were apparently mere blanket contracts for the life of the debtor's relationship with its client. In this case, the disputed funds were received by the debtor for work performed pursuant to an oral contract that was entered into in 1991 when the debtor agreed to perform the transactional work for Aspen Marine's public offering. Because Union Planters thus acquired a security interest in 1991 in the contract rights and subsequent proceeds arising from the debtor's oral contract, Union Planter's lien takes priority over the IRS's lien.

Order accordingly.

### ORDER

For the reasons set forth in the Memorandum Opinion this day passed to the Clerk for filing, it is hereby ORDERED that the judgment of the Bankruptcy Court is AFFIRMED, and this appeal is DISMISSED.