### In re Shane Lynn WAMPLER and Lori Lynn Wampler, Debtors.

#### No. 05–27659.

United States Bankruptcy Court, D. Kansas.

June 29, 2006.

Christopher R. Coons, Lawrence, KS, for Debtors.

## MEMORANDUM OPINION SUPPLEMENTING ORDER CONFIRMING CHAPTER 13 PLAN

ROBERT D. BERGER, Bankruptcy Judge.

At a hearing on March 9, 2006, this Court confirmed the debtors' Chapter 13 plan over the objections of creditors Nuvell Financial Services Corporation ("Nuvell") (Doc. No. 18) and Wells Fargo Financial Acceptance ("Wells Fargo") (Doc. No. 20) (collectively the "Creditors").[1] An order confirming the debtors' Chapter 13 plan is reflected on the record (Doc. No. 26). The order confirming the debtor's Chapter 13 plan is currently on appeal to the United States Bankruptcy Appellate Panel of the Tenth Circuit.[2] Although the appeal of an issue typically deprives this Court of jurisdiction over the matter on appeal, this Court may enter orders "pertaining to the appeal record in aid of the appeal process."[3] This memorandum opinion supplements the order of confirmation by more fully explaining the Court's findings and conclusions as set forth on the record in open court.

### Factual Background

The Creditors extended financing to the debtors for the purchase of automobiles for their personal use within the 910 days preceding the filing of the above-captioned proceeding. Nuvell's proof of claim reflects that its collateral is a 2004 Suzuki Verona, with a balance due of $15,892.14, but does not reflect the value for the vehicle. Wells Fargo's proof of claim reflects that its collateral is a 2001 Pontiac Aztek, with a balance due of $10,913.40, but likewise does not reflect the value for the vehicle. The automobiles served as collateral for the loans. As a result, the Creditors assert that Title 11 U.S.C. § 1325(a) requires their allowed claims be paid in full at the contract rate of interest over the duration of the debtors' Chapter 13 plan.[4] Under the debtors' plan as confirmed, the Creditors' allowed claims are paid in full without postpetition interest. In addition to the Court's oral findings and conclusions made in open court, the following constitutes the complete grounds for confirming the debtors' Chapter 13 plan.

### Discussion

I. The Hanging Paragraph of § 1325(a).

Section 1322 addresses the contents of Chapter 13 plans. Subsections (a)

1. This case was filed after October 17, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 became effective. All statutory references to the Bankruptcy Code are to 11 U.S.C. §§ 101–1330 (2006), unless otherwise specified.

2. *In re Wampler*, No. KS–06–026 (10th Cir. BAP Mar. 16, 2006).

3. *In re Carlson*, 255 B.R. 22, 23 (Bankr. N.D.Ill.2000) (citing *International Assoc. of Machinists and Aerospace Workers AFL–CIO v. Eastern Air Lines, Inc.*, 847 F.2d 1014, 1017 (2d Cir.1988)).

4. The Creditors' objection is predicated on the "Hanging Paragraph" as addressed and defined below. The Creditors do not otherwise object to confirmation of the debtors' plan which narrows the focus of this Court's analysis to the Hanging Paragraph.

and (b) of § 1322 set forth, respectively, the terms a Chapter 13 plan *shall* include and the terms a Chapter 13 plan *may* include. Section 1325(a), on the other hand, addresses the confirmation of a Chapter 13 plan and provides that a court, after notice and hearing, "shall confirm a plan if" certain criteria are met. The criteria set forth in § 1325(a) are the exclusive requirements that must be satisfied by a debtor before the court must confirm a Chapter 13 plan.[5] At odds here is the interplay between § 1325(a)(5), which applies to allowed secured claims, and an unnumbered, hanging paragraph (hereinafter the "Hanging Paragraph") that was added after § 1325(a)(9), and language contained therein regarding the treatment of certain motor vehicle loans (hereinafter the "910 Language"), with the adoption of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").[6]

In *Till v. SCS Credit Corp.*, the United States Supreme Court concluded that § 1325(a)(5)(B)(ii) entitled the holder of an allowed secured claim to receive interest on its claim at a modified rate during the pendency of the Chapter 13 case.[7] However, the enactment of BAPCPA and the addition of the Hanging Paragraph raise questions regarding what rate of interest, if any, the Creditors should be paid on their claims. The Hanging Paragraph of § 1325(a) reads:

**For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910–day preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor,** or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1–year period preceding that filing. (The "910 Language" is set out in bold.)

The pertinent subsection, § 1325(a)(5)(B)(ii), reads:

a) Except as provided in subsection (b), the court shall confirm a plan if—. . :

    (5) with respect to each allowed secured claim provided for by the plan—

    . . .

    (B)(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim. . . .

Here, the Creditors contend the addition of the 910 Language prohibits the modification of their right to receive the contract rate of interest on their claims during the pendency of the debtors' Chapter 13 plan. Conversely, while the debtors do not con-

---

**5.** *See Petro v. Mishler*, 276 F.3d 375 (7th Cir. 2002). Of course, § 1322 sets out mandatory and permissible language of a plan; these provisions are not relevant to this Court's analysis.

**6.** The Court recognizes that the Hanging Paragraph of § 1325(a)(5) is not limited to purchase money security interests in motor vehicles acquired for personal use, but may also apply to other types of collateral and debt incurred within the one-year period preceding the filing of a bankruptcy. However, since the latter does not drive this Court's analysis, the Court will refer to the relevant portion of the Hanging Paragraph as the "910 Language."

**7.** *Till v. SCS Credit Corp.*, 541 U.S. 465, 468–69, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004). In *Till*, the Supreme Court concluded that the correct rate of interest to be paid through a Chapter 13 plan on an allowed secured claim is the "prime-plus" formula rate.

test that the Creditors' prepetition claims are required to be paid in full through the Chapter 13 plan if they wish to retain the collateral, they contend that the 910 Language prevents the Creditors from receiving postpetition interest on their claims. *Review of Emerging 910 Language Interpretations.*

A number of courts have considered the 910 Language, although because the Hanging Paragraph is unnumbered, tracking its citation may initially prove difficult. At this point, it appears three interpretations of the 910 Language are emerging. The first interpretation, which has been adopted by several courts, construes the 910 Language to prohibit only the bifurcation pursuant to § 506(a) of a secured claim into a secured portion, which represents the actual value of the collateral, and an unsecured portion, which represents any portion of a prepetition claim that is not secured by the value of the collateral.[8] Many of these decisions assume, without discussion or rationale, that a creditor's 910 Claim is fully secured and the only issue addressed is whether the creditor is entitled to the contract or *Till* rate of interest.[9] Under the first interpretation, creditors are entitled to treat their entire prepetition claim as secured, which also entitles them to the postpetition interest on their entire claim.[10] The majority of the Courts adopting the first interpretation have concluded that creditors holding claims under the 910 Language are entitled to receive the *Till* modified rate of interest on their claim.[11]

Under the second interpretation, which has been adopted by at least one court,

8. *In re DeSardi,* 340 B.R. 790, 812 (Bankr. S.D.Tex.2006) (Isgur, J.) ("[A 910 Language] claim is an allowed secured claim and may be treated under § 1325(a)(5)."); *In re Fleming,* 339 B.R. 716, 722 (Bankr.E.D.Mo.2006) (Schermer, C.J.) ("The [910 Language] Language merely prohibits the bifurcation and cram down of the Car Creditors' claims and thus quantifies the Car Creditors' secured claims at the balance due on the filing date."); *In re Brown,* 339 B.R. 818, 820 (Bankr. S.D.Ga.2006) (Dalis, J.) ("[T]he [910 Language] means only that the claims it describes cannot be bifurcated into secured and unsecured portions under § 506(a)."); *In re Ezell,* 338 B.R. 330, 340 (Bankr.E.D.Tenn.2006) (Stair, J.) ("[W]hen the creditor files its claim as secured, the [910 Language following § 1325(a)(9)] precludes the use of Revised § 506(a) to reduce or bifurcate that claim into secured and unsecured components."); *In re Wright,* 338 B.R. 917, 919–20 (Bankr.M.D.Ala. 2006) (Williams, J.) ("[T]he claims of these creditors [affected by the application of the 910 Language following § 1325(a)(9)] must be treated as fully secured under the plan."); *In re Robinson,* 338 B.R. 70, 73–74 (Bankr. W.D.Mo.2006) (Federman, J.) ("[T]hese creditors are entitled to secured claims for the total amount of their claims, regardless of the value of the respective vehicles, and the Debtor cannot bifurcate them."); *In re Johnson,* 337 B.R. 269, 272 (Bankr.M.D.N.C.2006) (Waldrep, J.) ("The [910 Language following § 1325(a)(9)] simply provides that debtors may not bifurcate the claims of lenders with purchase money security interests in vehicles purchased within 910 days of bankruptcy for the debtor's personal use."); *see also In re Horn,* 338 B.R. 110 (Bankr.M.D.Ala.2006) (Williams, J.).

9. *In re DeSardi,* 340 B.R. 790, 812 (Bankr. S.D.Tex.2006); *In re Fleming,* 339 B.R. 716, 722 (Bankr.E.D.Mo.2006); *In re Brown,* 339 B.R. 818, 820 (Bankr.S.D.Ga.2006); *In re Ezell,* 338 B.R. 330, 340 (Bankr.E.D.Tenn. 2006); *In re Wright,* 338 B.R. 917, 919–20 (Bankr.M.D.Ala.2006); *In re Robinson,* 338 B.R. 70, 73–74 (Bankr.W.D.Mo.2006); *In re Johnson,* 337 B.R. 269, 272 (Bankr.M.D.N.C. 2006); *see also In re Horn,* 338 B.R. 110 (Bankr.M.D.Ala.2006).

10. Note 8, *supra.*

11. *Wright,* 338 B.R. at 920 ("Thus, *Till* has not been abrogated by the BAPCPA amendments."); *In re Robinson,* 338 B.R. 70, 75 ("In sum, [the court] conclude[s] that the BAPCPA amendments did not overrule *Till*."); *Johnson,* 337 B.R. at 273 ("[P]ursuant to Section 1322(b)(2), a debtor may still modify the term and the interest rate of the loan.").

creditors holding claims under the 910 Language (hereinafter "910 Claims") are not entitled to secured claims for the purposes of § 1325(a)(5).[12] Instead, a creditor with a 910 Claim "must receive the greater of (1) the full amount of the claim without interest; or (2) the amount the creditor would receive if the claim were bifurcated and crammed down (*i.e.,* secured portion paid with interest and unsecured portion paid pro rata)."[13]

The third interpretation, led by the oft-cited bankruptcy treatise, *Collier on Bankruptcy,* construes the 910 Language as it is written, which leaves a creditor with an allowed claim for the entire prepetition debt that must be paid in full but without postpetition interest through the duration of a Chapter 13 plan if the debtor wishes to retain the collateral.[14] For the reasons more fully set forth below, this Court agrees with *Collier on Bankruptcy* and construes the 910 Language as written.

*Claims Falling Under the 910 Language Exception Are Not Secured Claims Entitled to Accrue Postpetition Interest.*

■■■ "The starting point in discerning congressional intent is the existing statutory text, and not the predecessor statutes."[15] Where the statute is clear, "the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms."[16] Here, the statutory language is clear within the context of the Code.

The allowance and treatment of claims is generally governed by §§ 502 and 506 and the Federal Rules of Bankruptcy Procedure 3001, *et seq.* Pursuant to the provisions of § 502(a), a creditor that files a proof of claim without drawing a successful objection is entitled to an "allowed" claim. If a proof of claim draws an objection, § 502(b) directs the court, with certain exceptions, to "allow" such claim after determining its amount in dollars. Included in § 502 is the disallowance of unmatured interest.[17] Absent from § 502 is any discussion of a creditor's right to the allowance of a *secured* claim. On the other hand, as noted by the Supreme Court in *U.S. v. Ron Pair Enterprises, Inc.,* § 506 "governs the definition and treatment of secured claims, *i.e.,* claims by creditors against the estate that are secured by a lien on property in which the estate has an interest."[18] The operative language, found in § 506(a), provides:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such

---

12. *In re Carver,* 338 B.R. 521 (Bankr.S.D.Ga. 2006) (Walker, J.).

13. *Id.* at 528.

14. 8 COLLIER ON BANKRUPTCY ¶ 1325.06[1][a] at 1325–28 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev.2006).

15. *Lamie v. United States Trustee,* 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (citing *Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 438, 119 S.Ct. 755, 142 L.Ed.2d 881, (1999)).

16. *Id.* (internal quotations omitted) (citing *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000)).

17. § 502(b)(2).

18. *U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 238–239, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

creditor's interest or the amount so subject to set off is less than the amount of such allowed claim. . . .

The provisions of §§ 502 and 506, read together, establish the only means by which a court may determine that an allowed claim should be allowed as a secured claim.[19] In other words, for the purposes of claims allowance in bankruptcy, if § 506 does not apply, a creditor may be entitled to an allowed, albeit unsecured claim.

Section 1325(a) sets forth the terms under which a court *shall* confirm a chapter 13 plan. Relevant to this discussion is the application of § 1325(a)(5), which makes the sole reference to the treatment of allowed secured claims in a Chapter 13 plan. Specifically, § 1325(a)(5) states "with respect to each allowed secured claim provided for by the plan. . . ." However, as to 910 Claims, § 506 does not apply for the purposes of subparagraph (5). Because § 506 does not apply to creditors whose claims fall under the umbrella of the 910 Language and the only means by which said creditors are entitled to an allowed secured claim is by determination under the provisions of § 506, those creditors cannot hold allowed secured claims and are not entitled to the same treatment found in § 1325(a)(5). This conclusion is supported by the frequently cited and well-regarded bankruptcy treatise *Collier on Bankruptcy:*

> Language added at the end of section 1325(a) by the 2005 amendments to the Bankruptcy Code removes certain claims from the protections of section 1325(a)(5). This new language states that for purposes of section 1325(a)(5), section 506 shall not apply to certain claims. Such claims, therefore, cannot be determined to be allowed secured

claims under section 506(a) and are not within the ambit of section 1325(a)(5). Such claims may still be modified under section 1322(b)(2), which allows modification of the rights of holders of secured claims, with certain exceptions, but the restrictions on modification that apply to allowed secured claims under section 1325(a)(5) do not apply. A debtor is presumably bound only by the dictates of good faith and the other provisions of the Code in determining how such claims may be modified. Some courts, understandably, may look to prior law for guidance regarding what modifications are equitable.[20]

This Court agrees with *Collier on Bankruptcy,* which goes on to state:

> It is possible that this language [the Hanging Paragraph] was intended to prohibit the use of section 506(a) to bifurcate a secured claim into an allowed secured claim and an allowed unsecured claim as part of the cramdown permitted by section 1325(a)(5)(B) and, therefore, that such claims should be treated as fully secured claims regardless of the value of the collateral. But, even if that was the intent, because the new language added to section 1325(a) renders entirely inapplicable for some creditors the only section, section 506(a), that gives those creditors allowed secured claims, it does not to carry out such intent. In fact, earlier versions of the 2005 bankruptcy legislation had contained language which eliminated only the section 506(a) bifurcation of certain claims into secured and unsecured claims based on the value of the property, but did not eliminate their status as allowed secured claims. However, that language was not retained. Courts are

---

**19.** *See Carver,* 338 B.R. at 524.

**20.** 8 Collier on Bankruptcy ¶ 1325.06[1][a] at 1325–28 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev.2006).

required to implement the language of the statute and not what they think Congress might have intended instead.[21]

The statutory construction explained by *Collier* and adopted by this Court is most in concert with the plain reading of the amendment and, hence, in conformity with the interpretive dictate of the U.S. Supreme Court that "when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd-is to enforce it according to its terms." [22]

### Construing Claims Falling Under the 910 Language Exception as Wholly Secured Results in an Absurd Conclusion.

Of the courts that have concluded the 910 Language simply prevents bifurcation of the underlying claim into secured and unsecured portions, the court's opinion in *In re Brown*,[23] more than any other, explains its conclusions by setting forth a statutory construction of § 1325(a)(5) and the 910 Language that appears to provide, at first glance, a legitimate basis for its conclusion that the 910 Language prevents only the bifurcation of a claim while leaving the protections found in § 1325 intact. The court in *Brown* urges the conclusion based, at least in part, on the proposition that the 910 Claim must be an allowed secured claim since § 101(37) defines "lien" to include an interest in property to secure payment.[24]

This Court resists the urge to string together a definitional provision with a Code section that governs the allowance of claims (§ 502) to conclude that a 910 Claim must be an allowed secured claim (absent a successful objection to the proof of claim) that is paid interest as required under § 1325(a)(5)(B)(ii). This Court respectfully disagrees with the conclusion reached in *Brown* because the definition of "lien" found in § 101(37) does not contemplate the manner in which a secured claim is allowed and treated under a Chapter 13 plan. As mentioned earlier, the Supreme Court in *U.S. v. Ron Pair Enterprises, Inc.*, contemplated that section 506 governs the definition and treatment of secured claims, *i.e.*, claims by creditors against the estate that are secured by a lien on property in which the estate has an interest.[25] While a lien might attach to property, it is secured for purposes of the Bankruptcy Code by operation of § 506(a) only to the extent of the value of the collateral upon which the lien is fixed.[26]

The court in *Brown* incorrectly supports its interpretation that 910 Claims are

---

**21.** 8 COLLIER ON BANKRUPTCY ¶ 1325.06[1][a] at 1325–28 to 1325–29 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev.2006) (citations omitted).

**22.** *Lamie v. United States Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000)) (internal quotation marks omitted) (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (in turn quoting *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917))).

**23.** 339 B.R. 818 (Bankr.S.D.Ga.2006).

**24.** The definition of "lien" found in § 101(37) is little more than a recitation of the commonly understood meaning for the term. *See, e.g.*, BLACK'S LAW DICTIONARY 922 (6th ed.1990) wherein "lien" is defined as "a claim, encumbrance, or charge on property for payment of some debt, obligation or duty." What this definition does not establish is the treatment of such of such interest under the Bankruptcy Code and extrapolation of the language to define what is an "allowed secured claim" is misplaced.

**25.** 489 U.S. 235, 238–239, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

**26.** *Id.*

treated as allowed secured claims by relying on the Supreme Court's decision *Dewsnup v. Timm.*[27] In *Dewsnup*, the Supreme Court considered, within the context of a Chapter 7 proceeding, § 506(d) of the Code, which appears to void liens to the extent that they exceed the value of the collateral. The relevant language in § 506(d) reads: "To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void . . . ."[28] The Supreme Court concluded that "allowed secured claim" in § 506(d) refers to a "claim [that] is secured by a lien and has been fully allowed."[29] In effect, under the decision in *Dewsnup*, when a claim is secured under applicable non-bankruptcy law and allowed in a bankruptcy case as prescribed by § 502, then the underlying lien cannot be voided by § 506(d).

The Court in *Brown* embraces the Supreme Court's conclusion in *Dewsnup* that the words "allowed secured claim" as applied under § 506(d) should be read independently and given separate meanings.[30] That is, it should first be considered whether a claim is allowed, and second, whether a claim is secured. The court in *Brown* concludes that the Supreme Court's term-by-term interpretation of the phrase "allowed secured claim" in *Dewsnup* is equally applicable to the phrase "allowed secured claim" in § 1325(a)(5).[31] By reading each term separately, the court in *Brown* surmises that even though § 506 is no longer applicable, a creditor whose claim falls under the 910 Language may still have an *allowed* claim that is *secured* by a lien as defined by § 101(37).

However, the conclusions reached in *Dewsnup* are neither determinative nor relevant to the disposition of the issue before the Court. *Dewsnup* is easily distinguished on its facts in that it applied to a Chapter 7 proceeding wherein the debtor attempted to employ § 506(d) to strip down a mortgagee's lien on real property to the value of its collateral.[32] The Supreme Court was clear in *Dewsnup* that it expressed "no opinion as to whether the words 'allowed secured claim' have a different meaning in other provisions of the Bankruptcy Code."[33] Here, application of the 910 Language within the context of § 1325(a) requires a different interpretation of the phrase "allowed secured claim" than was considered by the Supreme Court in *Dewsnup*. Specifically, in addition to the phrase "allowed secured claim," § 1325(a) also makes repeated use of the phrase "allowed unsecured claim," which suggests, contrary to the interpretation advanced in *Brown*, that the phrase "allowed secured claim" has special significance and means more than simply whether the claim is secured under applicable non-bankruptcy law.

Within the context of § 1325(a)(5), if a creditor does not accept a specific treatment of its claim or a debtor does not surrender the property securing the claim, then the court is required to confirm a plan over a secured creditor's objection when, "with respect to each allowed secured claim provided by the plan . . . the value, as of the effective date of the plan,

---

27. 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

28. 11 U.S.C. § 506(d)

29. *Dewsnup*, 502 U.S. at 417, 112 S.Ct. 773.

30. 339 B.R. at 821.

31. *Id.*

32. *Dewsnup*, 502 U.S. at 410–12, 112 S.Ct. 773.

33. *Dewsnup*, 502 U.S. at 417 n. 3, 112 S.Ct. 773.

of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim." If the phrase "allowed secured claim," as contemplated by § 1325(a)(5), means only, as the Court in *Brown* suggests, that a claim allowed under § 502 is secured by a lien as defined by § 101(37), an absurd result ensues: Chapter 13 debtors would be required to pay through their plan for every secured creditor its entire claim, both the secured and unsecured portions, no matter how small or insignificant the worth of the collateral upon which the underlying lien attaches. This absurd result was rejected by the Eighth Circuit in *Harmon v. United States*, where the court considered the meaning of the phrase "allowed secured claim" found in § 1225(a)(5).[34]

In *Harmon,* the Eighth Circuit looked to Chapter 13 case law to conclude that " 'allowed secured claim' in § 1225(a)(5) must be interpreted by reference to the bifurcation of claims into secured claims and unsecured claims by § 506(a)," and that "the difference between an 'allowed secured claim' and an 'allowed unsecured claim' is not whether it is secured in the non-bankruptcy sense but whether it is a secured claim as defined by Section 506(a)."[35] This is wherein the confusion arises. It is one matter for a creditor to hold a prepetition lien; a separate and very distinct issue is the treatment of that creditor's debt and the associated lien via the bankruptcy reorganization process in Chapter 13. Section 506 is not a definitional provision, but a substantive one that provides the only mechanism, within the confines of the Code, wherein an allowed secured claim is determined. State law

may define and create property interests, but it is the function of the Code to determine their treatment in bankruptcy. The *Brown* decision in effect abdicates this fundamental role to state law.

The failure in *Brown* to distinguish between a claim secured in the non-bankruptcy sense and a secured claim as defined by § 506(a) renders the 910 Language superfluous because a debtor would be unable to discharge personal liability on the unsecured portion of a debt if any portion of the underlying obligation, no matter how small, were secured. To follow the *Brown* court's analysis that relies on *Dewsnup* "would lead to absurd results: the plan would have to provide for the creditor to retain its full lien, and the debtor would have to distribute to the creditor property with a value equivalent to the creditor's full allowed claim—both the secured and unsecured portions."[36] Hence, all secured claims would receive payment in full, irrespective of the value of the creditor's collateral, which is the treatment that Congress only provided to 910 Claims that would otherwise be treated under § 1325(a)(5). Consequentially, in order to give the phrase "allowed secured claim" as employed by § 1325(a)(5) meaning without rendering the 910 Language meaningless, it must be read to reference claims that have been allowed as secured after the application of § 506(a). Because the 910 Language renders § 506 inapplicable for the purposes of § 1325(a)(5), which addresses only those claims that are allowed secured claims by operation of § 506(a), creditors whose claims fall within the 910 Language are not entitled to the

---

34. 101 F.3d 574, 583 (8th Cir.1996).

35. *Harmon,* 101 F.3d at 583. The changes to § 1325(a)(5) effected in BAPCPA do not alter this Court's comparative analysis with

§ 1225(a)(5). The latter was derived directly from § 1325(a)(5).

36. *Id.* at 583. This is the absurd result that the *Harmon* court rightly rejected.

protections that creditors with secured claims allowed under § 506(a) find in § 1325(a)(5).[37]

This Court's conclusion that the 910 Language exception requires debtors to pay a creditor's entire prepetition claim through the Chapter 13 plan without the accrual of postpetition interest avoids the problems associated with the court's position in *Brown* by applying the plain and unambiguous terms of the statute. This conclusion also fits within the context of the driving force behind § 1325(a)(5). In *Till v. SCS Credit Corporation*, the Supreme Court observed that section § 1325(a)(5)(B)(ii) "requires bankruptcy courts to ensure that the property to be distributed to a particular secured creditor over the life of a bankruptcy plan has a total 'value, as of the effective date of the plan,' that equals or exceeds the value of the creditor's allowed secured claim."[38] However, allowing postpetition interest to accrue on claims falling under the 910 Language, which are not allowed secured claims within the meaning of § 506(a), does not comport with the view of § 1325(a)(5)(B)(ii) espoused in *Till*. By removing § 506 from the equation, claims falling within the 910 Language are a class of claims whose payment is secured by a non-bankruptcy lien and allowed under § 502 and must be treated as such outside the confines of § 1325(a)(5). Claims allowed by operation of § 502 do not include claims for unmatured, or in this case, postpetition interest.

### The Court Is Required to Construe Plain, Unambiguous Language as Written.

While this Court should not check its common sense in at the door, neither should this Court be swayed in its interpretation by presumptions engendered by almost ten years of Congressional starts and stops regarding bankruptcy reform legislation that ultimately left BAPCPA at the feet of judges to interpret and apply.[39] By adoption of the plain and unambiguous 910 Language, Congress has seen fit to establish special treatment for 910 Claims. This is hardly a novel concept in the Bankruptcy Code. The 910 Language requires that the allowed claim be paid in full, but by making the provisions of § 506 inapplicable, does not mandate treatment of the claim as an allowed secured claim requiring the payment of postpetition interest under § 1325(a)(5)(B)(ii). Even though the existence of the lien stands as a prerequisite to this treatment during the pendency of the bankruptcy case, it is not determinative of the claim's treatment under a Chapter 13 plan. The plain reading of the 910 Language specifically eliminated this requirement, even for a 910 Claim that would otherwise be an allowed secured claim as contemplated under § 1325(a)(5).

To clarify, it is not this Court's finding that creditors are somehow deprived of their prepetition lien in their collateral. A creditor may have a lien in property of the estate without holding an allowed secured claim. The liens held by creditors in property subject to the 910 Language will not be released until payment of their allowed claims. This is the treatment for such claims that Congress denominated when it added the 910 Language to § 1325. It is not the business of this Court to discern whether the plain reading of the 910 Lan-

---

**37.** COLLIER ON BANKRUPTCY, ¶ 1325.06[1][a] at 1325–28 to 1325–29 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev.2006) (citations omitted).

**38.** *Till*, 541 U.S. at 474, 124 S.Ct. 1951.

**39.** BAPCPA may trace its roots back to H.R. 2500, 105th Cong. (1997).

guage is in conformity with the collective intent of Congress, nor is such determination pertinent to this Court's holding when the statute is unambiguous.

Conventional wisdom is that liens emerge from bankruptcy unaffected. For example, under § 1322(b)(2), Congress employed concise language to restrict the modification of a mortgagee's lien in the debtor's residence, wherein it stated that a plan may "modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence* ...."[40] Interestingly, despite this language and the holding in *Nobelman*,[41] it is generally acknowledged that a wholly unsecured mortgage or lien in real property that is the debtor's principal residence may be stripped down and is modifiable under section 1322(b)(2):

> Thus, since *Nobelman*, such completely undersecured claims have been found to be modifiable under section 1322(b)(2). As the Court of Appeals for the Third Circuit held in *McDonald v. Master Financial, Inc. (In re McDonald)*, [205 F.3d 606 (3rd Cir.2000)], this is the only result that is consistent with the logic of the *Nobelman* decision, which had specifically rejected the lower court's holding that section 506(a) did not apply to the mortgage claim and instead found that the debtors "were correct in looking to § 506(a) for a judicial valuation of the collateral to determine the status of the bank's secured claim," and then, because

the bank was the holder of a secured claim under section 506(a), held that the bank's rights could not be modified. Other courts of appeals have reached the same conclusion.[42]

Congress chose to enact the straightforward and concise 910 Language acknowledging that while a creditor's debt may be secured with a lien, if certain conditions are met, then the claim is not treated as an allowed *secured* claim under § 1325(a)(5). Instead, the creditor's allowed claim must be paid in full because a 910 Claim may not be bifurcated. The 910 Language does not alter the debtor's prepetition lien, but provides for a separate and distinct treatment of the allowed claim. As allowed, but not secured claims, 910 Claims may not include unmatured or, in this case, postpetition interest.[43]

Since the 910 Language does not require the payment of the present value of the claim, then the debtors in the case at bar provide for appropriate treatment because their plan provides for retention of the collateral and payment in full of the Creditors' claims over the length of the plan without postpetition interest. This interpretation is not a novel concept within the Bankruptcy Code. The Code is laced with special classification and treatment of priority claims under § 507(a), the exceptions to discharge for certain unsecured claims under § 523, the subordination of tax liens under § 724(b), the subordination of liens under § 506(c) by a trustee for certain costs and expenses, as well as a lienhold-

---

40. Emphasis added.

41. *Nobelman v. American Sav. Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). The court found that none of the mortgagee's claim could be modified even if it were only partially secured by the value of the collateral. The *Nobelman* court did intimate that if a creditor held a lien on property for which there is no value to secure it, the creditor would not be a holder of a secured claim and

would not benefit from the anti-modification protections of § 1322(b)(2).

42. 8 COLLIER ON BANKRUPTCY ¶ 1322.06[1][a] at 1322–26 (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev.2006) (footnotes omitted).

43. § 502(b)(2).

er's election under § 1111(b). Liens may also be avoided or set aside via the trustee powers in §§ 544, 547 and 548. Some cases have held that if a plan does not specifically provide for the retention of a creditor's lien, the lien is eviscerated upon confirmation of the plan under Chapter 11.[44] Chapter 13 debtors have successfully employed the TILA to rescind the refinancing of a mortgage note and void the attendant lien.[45]

Tax liens and the underlying claims sometimes engender unique treatment. If the Internal Revenue Service files a Notice of Federal Tax Lien prior to the filing of a Chapter 13 bankruptcy case, it is only treated as a secured claim to the extent there is sufficient equity in property of the estate. Since certain retirement plans are excluded from the bankruptcy estate, then the lien of the IRS is not treated as secured under the Bankruptcy Code as to such property.[46] Section 552(a) treats differently valid prepetition liens held by commercial lenders and those of the Internal Revenue Service wherein it states that, with exceptions, "property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case." [47] This language is especially pertinent with regard to a commercial lender's interest in cash collateral and a continuing lien in the generation of postpetition assets by the debtor-in-possession. Since the IRS does not hold a consensual lien, § 552(a) does not prevent a properly perfected IRS lien to continue to attach to postpetition assets of the debtor or the estate.[48] The prepetition tax lien and the commercial lender's liens are treated differently.[49]

Debtors in Chapter 7 and Chapter 13 bankruptcies may, under limited circumstances, employ trustee powers with regard to what would otherwise be exempt property or to claim as exempt certain recovered property.[50] Debtors frequently employ § 522(f) to avoid liens that encumber exempt property, such as the home-

---

**44.** See, e.g., *In re Regional Bldg. Systems, Inc.,* 254 F.3d 528, 531 (4th Cir.2001) (concluding plain terms of § 1141(c) rendered property dealt with by plan free of liens that were not expressly preserved by the plan upon confirmation); *Matter of Penrod,* 50 F.3d 459, 463 (7th Cir.1995) (holding that under § 1141(c), "unless the plan of reorganization, or the order confirming the plan, says that a lien is preserved, it is extinguished by the confirmation."); *In re Be–Mac Transport Co.,* 83 F.3d 1020 (8th Cir.1996) (following *Penrod*); *In re Barton Indus., Inc.,* 104 F.3d 1241 (10th Cir.1997) (following *Barton*).

**45.** *In re Stanley,* 315 B.R. 602 (Bankr.D.Kan. 2004).

**46.** *See* § 541(b)(7); *see also Patterson v. Shumate,* 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). This is despite the fact that there is little question that the IRS's lien attaches to all of the debtor's property, including exempt assets and the ERISA-qualified retirement plans.

**47.** *See In re County of Orange,* 179 B.R. 185, 192 (Bankr.C.D.Cal.1995) (concluding § 552(a) applies only to liens arising from consensual security agreements and not to other types of liens); *see also In re May Reporting Services, Inc.,* 115 B.R. 652, 657 (Bankr.D.S.D.1990) (section 552(a) applies only to liens arising from consensual security agreements and not to United States tax liens which are entirely statutory); *In re National Fin. Alternatives, Inc.,* 96 B.R. 844, 849 (Bankr.N.D.Ill.1989) (federal tax lien continues to attach to property acquired post-petition by debtor notwithstanding § 552(a)).

**48.** *See May Reporting Services,* 115 B.R. at 657.

**49.** *Id.*

**50.** Sections 522(g) and (h).

stead. The debtor's home arrearage claims are "secured," but it is possible that interest is not paid on the interest component of the arrearage claim.[51] Finally, a mortgage lien may be stripped down if wholly unsecured.[52]

The *Harmon* decision also acknowledges the weak underpinnings that liens pass through bankruptcy unaffected:

At this point, we think it wise to address the conventional wisdom that liens pass through bankruptcy unaffected. As Judge Posner recently demonstrated in *In re Penrod*, 50 F.3d 459, 461–62 (7th Cir.1995), this "old saw" is actually far too broad, for there are many ways in which liens may be affected by bankruptcy proceedings. To name just a few, a lien may be removed from collateral and replaced by adequate protection if the trustee obtains permission to sell property free and clear of liens, *see* 11 U.S.C. § 363(e)-(f) (1994), or voided if the related claim is disallowed, *see* 11 U.S.C. § 506(d) (1994), or avoided to the extent it impairs an exemption of the debtor, *see* 11 U.S.C. § 522(f) (1994), or avoided if it is the result of a preference or a fraudulent transfer, *see* 11 U.S.C. §§ 547–548 (1994). Because all of these provisions are applicable in Chapter 7, it is not even accurate to say that liens pass through Chapter 7 unaffected.[53]

A primary cog that drives the bankruptcy machinery is the disparate treatment of claims. Does this Court's interpretation alter the treatment of 910 Claims in comparison with other lienholders under § 1325(a)(5)? Absolutely. Is this interpretation at odds with a plain reading of the Code or aversive to the Code? Absolutely not. Motor vehicle lenders enjoy special treatment for certain of their claims in Chapter 13 because of the 910 Language. On the road to this treatment, these lenders' claims are no longer treated as allowed secured claims under the plan, and as such, are not entitled to postpetition interest as contemplated under § 1325(a)(5)(B)(ii). The 910 Language specifically disallows treatment of what otherwise would be an allowed secured claim and directs a different treatment; that treatment is provided in the debtors' plan before this Court and as confirmed by this Court. This Court concludes that the 910 Claim is not an allowed secured claim as contemplated under § 1325(a)(5) and will not conjure such treatment from other Code sections. It is axiomatic to the construction of legislation that a statute enacted specifically with reference to a particular type of claim will govern over the more general sections of the Bankruptcy Code.[54]

II. **The Criteria Set Forth in § 1325(a) Are Not the Exclusive Grounds for Confirming a Chapter 13 Plan Over a Creditor's Objection.**

Even if the criteria set forth in § 1325(a) otherwise entitles the Creditors to allowed secured claims with interest accruing thereon, this Court retains the discretion to confirm Chapter 13 plans

---

51. Section 1322(a) provides that "the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and state law."

52. See note 42, *supra*.

53. 101 F.3d at 581.

54. *Guidry v. Sheet Metal Workers Nat. Pension Fund*, 493 U.S. 365, 375–76, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990) (citing *Morton v. Mancari*, 417 U.S. 535, 550–51, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974) ("Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one. . . .")).

over a creditor's objection.[55] As noted by the Third Circuit in *In re Szostek*, "[i]f Congress had intended for § 1325(a) to be mandatory, it could have included that requirement with the requirements already listed in § 1322."[56] Further evidence of the discretionary nature of § 1325(a) is found by comparison with the language of § 1129(a), which provides that a court shall confirm a Chapter 11 plan "*only if*" certain requirements are met.[57]

> Thus, the distinction between § 1322 and § 1325(a) and the inclusion of the "only if" language in § 1129, which is absent from § 1325(a), show an unmistakable intent on the part of Congress that a plan may be confirmed even if it does not comport with the requirements of § 1325(a)(5).[58]

Here, the Court would have confirmed the debtors' Chapter 13 plan regardless of whether section 1325 requires the Creditors' claims be paid with postpetition interest, either at contract or some other rate, over the duration of the debtors' Chapter 13 plan. The Court believes the debtors' plan was filed in good faith. Because the debtors propose to pay the Creditors' allowed claims over the duration of the plan, the Creditors will likely receive more than they would have received had the debtors filed under Chapter 7 or otherwise surrendered the collateral to the Creditors.

The Creditors do not contest that the debtors' plan satisfies the required elements of § 1322(a). Accordingly, it is within the province of this Court to determine whether the remaining terms of the debtors' Chapter 13 plan provide appropriate and equitable treatment of the Creditors' claims. The Court finds that the facts and circumstances of this proceeding warrant the conclusion that the debtors' plan should be confirmed notwithstanding any alleged failure to satisfy criteria found in § 1325(a)(5).

### Conclusion

For the foregoing reasons and the reasons set forth more fully at the confirmation hearing, the debtors' Chapter 13 was confirmed.

---

**55.** *In re Escobedo*, 28 F.3d 34, 35 (7th Cir. 1994); *In re Szostek*, 886 F.2d 1405, 1411 (3rd Cir.1989).

**56.** 886 F.2d at 1411. Notably, the Tenth Circuit has cited *Szostek* as supporting authority for its decisions, though in relation to different legal issues, on at least two other occasions. *See In re Andersen*, 179 F.3d 1253 (10th Cir.1999); *In re Talbot*, 124 F.3d 1201 (10th Cir.1997).

**57.** 11 U.S.C. § 1129(a).

**58.** *Szostek*, 886 F.2d at 1411.